IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONTINENTAL CASUALTY COMPANY; AMERICAN )
CASUALTY COMPANY OF READING, PENNSYLVANIA; )
TRANSPORTATION INSURANCE COMPANY; and )
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, )
)
Plaintiffs, )
)
v. )
)
STAFFING CONCEPTS, INC.; STAFFING CONCEPTS )
NATIONAL, INC.; STAFFING CONCEPTS )
INTERNATIONAL, INC.; SC OF FLORIDA II, INC.; )
VENTURE RESOURCES GROUP, LLC; ALTERNATIVE )
MARKETING GROUP, INC.; HUMAN CAPITAL SERVICES, )
INC.; PRODUCTIVE EMPLOYER CONCEPTS, INC.; HUMAN )
CAPITAL SOLUTIONS, INC.; AND EPIC STAFF )
MANAGEMENT, INC., )
)
Defendants. )
)

06CV5473
JUDGE GUZMAN
MAGISTRATE JUDGE SCHENKIER

## COMPLAINT

Plaintiffs, Continental Casualty Company; American Casualty Company of Reading, Pennsylvania; Transportation Insurance Company; and National Fire Insurance Company of Hartford complain against the defendants, Staffing Concepts, Inc.; Staffing Concepts National, Inc.; Staffing Concepts International, Inc.; SC of Florida II, Inc.; Venture Resources Group, LLC; Alternative Marketing Group, Inc.; Human Capital Services, Inc.; Productive Employer Concepts, Inc.; Human Capital Solutions, Inc.; and Epic Staff Management, Inc. as follows:

### SUMMARY OF THE ACTION

1. This action is brought to recover more than $13 million in past due amounts owed by Staffing Concepts, Inc. or one or more of its affiliates to Continental Casualty Company,

American Casualty Company of Reading, Pennsylvania, Transportation Insurance Company, and National Fire Insurance Company of Hartford.

## PARTIES

*The Plaintiffs:*

2. Continental Casualty Company is an Illinois corporation with its principal place of business in Chicago, Illinois. Continental Casualty Company is also referred to in this Complaint as Continental Casualty.

3. American Casualty Company of Reading, Pennsylvania is a Pennsylvania corporation with its principal place of business in Chicago, Illinois. American Casualty Company of Reading, Pennsylvania is also referred to in this Complaint as American Casualty.

4. Transportation Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois. Transportation Insurance Company is also referred to in this Complaint as Transportation.

5. National Fire Insurance Company of Hartford is a Connecticut corporation with its principal place of business in Chicago, Illinois. National Fire Insurance Company of Hartford is also referred to in this Complaint as National Fire.

6. Continental Casualty, American Casualty, Transportation, and National Fire are engaged in the business of selling and providing property and casualty insurance to their clients.

7. Continental Casualty, American Casualty, Transportation, and National Fire are affiliated corporations that conduct business under the "CNA" service mark. Continental Casualty, American Casualty, Transportation, and National Fire are referred to collectively herein as "CNA Insurers."

## *The Defendants:*

8. Staffing Concepts, Inc. is a Florida corporation with its principal place of business in Tampa, Florida. Prior to one or more mergers or name changes, Staffing Concepts, Inc. was known as Staffing Concepts International, Inc., or PEO Management V, Inc. Staffing Concepts, Inc. has also operated under the assumed name Staffing Concepts of Florida.

9. Staffing Concepts National, Inc. is a Florida corporation with its principal place of business in Tampa, Florida. Staffing Concepts National, Inc. was previously named HRI Operations, Inc. and Human Capital Services, Inc. Staffing Concepts National, Inc. has also operated under the assumed name SCN of Florida.

10. Staffing Concepts International, Inc. is a Delaware corporation. On information and belief, Staffing Concepts International, Inc. has its principal place of business in Delaware, Florida, or Georgia.

11. SC of Florida II, Inc. is a Florida corporation with its principal place of business in Tampa, Florida. Prior to one or more mergers or name changes, SC of Florida II, Inc. was known as SC of Florida, Inc., Greystone, Inc., Jobs Now, Inc., Equity Leasing-Finance, Inc., Gilmore Consulting Group, Inc., or Gilmore Holdings, Inc.

12. Venture Resources Group, LLC is a Delaware limited liability company with its principal place of business in Tampa, Florida.

13. Alternative Marketing Group, Inc. is a Florida corporation with its principal place of business in Tampa, Florida.

14. Human Capital Services, Inc. is a Florida corporation with its principal place of business in Tampa, Florida. Human Capital Services, Inc. was previously named People First Group, Inc.

15. Productive Employer Concepts, Inc. is a Florida corporation with its principal place of business in Tampa, Florida.

16. Human Capital Solutions, Inc. is a Florida corporation with its principal place of business in Tampa, Florida.

17. Epic Staff Management, Inc. is a Wisconsin corporation. On information and belief, Epic Staff Management, Inc. has its principal place of business, in Florida, Georgia, or Wisconsin. Prior to one or more mergers or name changes, Epic Staff Management, Inc. was known as E Acquisition Corp. I, Epic Skilled & Industrial, Inc., or SKWL, Inc.

18. The defendants are affiliated corporations and are referred to collectively herein as "SCI Companies" or "defendants."

19. SCI Companies is a professional employer organization ("PEO"), which contractually assumes and manages human resource and personnel responsibilities and employer risks for small to mid-sized businesses by establishing and maintaining an employer relationship with worksite employees. One of the functions that SCI Companies assumes for many of its clients is obtaining and maintaining workers compensation or other insurance.

20. CNA Insurers believe that there may be additional entities that are related to SCI Companies that are also responsible for the amounts due under the insurance programs identified in this complaint. CNA reserves the right to seek to amend this complaint to name additional entities should CNA Insurers' discovery and investigation disclose that there are additional entities that are responsible for the amounts due under the insurance programs identified in this complaint.

## JURISDICTION AND VENUE

21. As set out more fully below, CNA Insurers seek to collect more than $13 million for past due amounts.

4

22. Jurisdiction over the subject matter is proper in this Court under 28 U.S.C. § 1332 because the parties to this action are of diverse citizenship and the amount in controversy exceeds the required jurisdictional minimum, exclusive of interest and costs.

23. The defendants are subject to the jurisdiction of this Court because, among other things:

(a) the policies and agreements which form the basis of this complaint were negotiated in substantial part in Chicago, Illinois;

(b) some of the insurance policies at issue provided coverage to defendants' operations in Illinois;

(c) some of the policies and agreements were prepared or issued from Chicago, Illinois to defendants or their agent;

(d) Staffing Concepts, Inc. was qualified and registered to do business in Illinois, at least during the period from 1997 to 2001, which period substantially overlaps with the period of the insurance programs at issue;

(e) Staffing Concepts, Inc. registered in Illinois to do business under the assumed name Staffing Concepts of Florida;

(f) Staffing Concepts National, Inc. is qualified and registered to do business in Illinois and has been so qualified and registered since 2000, including nearly the entire period of the insurance programs at issue;

(g) Staffing Concepts National, Inc. registered in Illinois to do business under the assumed name SCN of Florida;

5

(h) Staffing Concepts National, Inc. maintains an office in Oak Brook, Illinois, from which SCI Companies conducts substantial business, including a significant portion of the business at issue;

(i) Venture Resources Group, LLC is qualified and registered to do business in Illinois;

(j) Venture Resources Group, LLC maintains an office in Oak Brook, Illinois, from which SCI Companies conducts substantial business, including a significant portion of the business at issue;

(k) many of the agreements at issue were prepared and executed by CNA Insurers in Chicago, Illinois;

(l) certain of the agreements between the parties are expressly governed by Illinois law; and

(m) defendants rendered payments to CNA Insurers in Chicago, Illinois.

24.  Venue is proper in this Court under 28 U.S.C. § 1391(a) because, among other things, a substantial part of the events or omissions giving rise to the claim occurred in this district, as set forth in paragraphs 23, 29, 36, 42, and 48 of this Complaint.

## FACTS COMMON TO ALL COUNTS

25.  In general, workers' compensation insurance covers job-related injuries by employees, and employers' liability insurance covers certain other injuries by employees. Workers' compensation and employers' liability insurance is often provided in the same policy. In the states of North Dakota, Ohio, Washington, West Virginia, and Wyoming, all workers' compensation insurance is provided by a state fund, which does not provide employers' liability insurance. Stop gap liability insurance covers employers' liability in those five states.

26. CNA Insurers issued programs of insurance to SCI Companies for four consecutive policy periods, and SCI Companies accepted each of these insurance programs. The insurance programs covered the periods of 1/1/00 to 1/1/01 ("2000 Insurance Program"), 1/1/01 to 1/1/02 ("2001 Insurance Program"), 1/1/02 to 1/1/03 ("2002 Insurance Program"), and 1/1/03 to 4/30/03 ("2003 Insurance Program"). Each insurance program was documented by, among other things, multiple insurance policies and a finance agreement. The policies and the finance agreements are described below.

### *The Policies:*

27. Most of the policies include large deductible obligations, under which SCI Companies agreed to reimburse CNA Insurers for specified portions of the payments made for each claim under the policies. SCI Companies' deductibles ranged from $250,000 to $750,000 per claim. By assuming these large deductible obligations, SCI Companies benefited by having significantly reduced premium obligations.

**2000 Insurance Policies**

28. Continental Casualty issued to SCI Companies approximately 37 policies ("2000 Insurance Policies") in the 2000 Insurance Program. Each of the SCI Companies is a named insured under some or all of the 2000 Insurance Policies.

29. One of the 2000 Insurance Policies, policy number WC 194270107, is a "master" policy providing workers' compensation coverage to SCI Companies and various clients of SCI Companies in 31 states, including Illinois.

30. Another of the 2000 Insurance Policies, policy number WC 194270110, provides workers' compensation coverage to SCI Companies and various clients of SCI Companies in 3 states – Nevada, Oregon, and Wisconsin.

31. Another of the 2000 Insurance Policies, policy number GL 194270124, provides stop-gap liability coverage to SCI Companies and various clients of SCI Companies in 5 states – North Dakota, Ohio, Washington, West Virginia, and Wyoming.

32. Except for policy numbers WC 194270107, WC 194270110, and GL 194270124, each of the 2000 Insurance Policies provides workers' compensation coverage to SCI Companies and specific clients of SCI Companies named in the particular policy.

33. The 2000 Insurance Program provided that SCI Companies had a deductible obligation of $250,000 per claim except for claims under policy numbers WC 194270110 or GL 194270124.

34. At this time, CNA Insurers make no claim that SCI Companies breached any obligations under the 2000 Insurance Policies. CNA Insurers reserve the right to seek to amend this complaint to add such a claim should CNA Insurers' discovery and investigation disclose that CNA Insurers have been damaged by breach of the 2000 Insurance Policies.

**2001 Insurance Policies**

35. American Casualty and Transportation issued to SCI Companies a total of approximately 23 policies ("2001 Insurance Policies") in the 2001 Insurance Program. Each of the SCI Companies is a named insured under some or all of the 2001 Insurance Policies.

36. One of the 2001 Insurance Policies issued by American Casualty, policy number WC 194270107, is a "master" policy providing workers' compensation coverage to SCI Companies in 33 states, including Illinois, plus the District of Columbia.

37. One of the 2001 Insurance Policies issued by Transportation, policy number WC 194270110, provides workers' compensation coverage to SCI Companies and various clients of SCI Companies in 3 states – Nevada, Oregon, and Wisconsin.

38.     Another of the 2001 Insurance Policies issued by Transportation, policy number GL 194270124, provides stop-gap liability coverage to SCI Companies and various clients of SCI Companies in 5 states – North Dakota, Ohio, Washington, West Virginia, and Wyoming.

39.     Except for policy numbers WC 194270107, WC 194270110, and GL 194270124, each of the 2001 Insurance Policies provides workers' compensation coverage to SCI Companies and specific clients of SCI Companies named in the particular policy.

40.     The 2001 Insurance Program provided that SCI Companies had a deductible obligation of $350,000 per claim, except for claims under policy numbers WC 194270110 or GL 194270124.

**2002 Insurance Policies**

41.     Continental Casualty, Transportation, and National Fire issued to SCI Companies a total of approximately 32 policies ("2002 Insurance Policies") in the 2002 Insurance Program. Each of the SCI Companies is a named insured under some or all of the 2002 Insurance Policies.

42.     One of the 2002 Insurance Policies issued by National Fire, policy number WC 247839589, is a "master" policy providing workers' compensation coverage to SCI Companies in 34 states, including Illinois, plus the District of Columbia.

43.     One of the 2002 Insurance Policies issued by Transportation, policy number WC 194270110 provides workers' compensation coverage to SCI Companies and various clients of SCI Companies in 2 states – Nevada and Wisconsin. Another of the 2002 Insurance Policies issued by Transportation, policy number WC 247839592, provides workers' compensation coverage to SCI Companies and various clients of SCI Companies in Oregon.

44. Another of the 2002 Insurance Policies issued by Transportation, policy number GL 194270124, provides stop-gap liability coverage to SCI Companies and various clients of SCI Companies in 5 states – North Dakota, Ohio, Washington, West Virginia, and Wyoming.

45. Except for policy numbers WC 247839589, WC 194270110, WC 247839592, and GL 194270124, each of the 2002 Insurance Policies provides workers' compensation coverage to SCI Companies and specific clients of SCI Companies named in the particular policy.

46. The 2002 Insurance Program provided that SCI Companies had a deductible obligation of $500,000 per claim, except for claims under policy numbers WC 194270110, GL 194270124, or WC 247839592.

**2003 Insurance Policies**

47. Continental Casualty, Transportation, and National Fire issued to SCI Companies a total of approximately 33 policies ("2003 Insurance Policies") in the 2003 Insurance Program. Each of the SCI Companies is a named insured under some or all of the 2003 Insurance Policies.

48. One of the 2003 Insurance Policies issued by National Fire, policy number WC 247857672, is a "master" policy providing workers' compensation coverage to SCI Companies in 36 states, including Illinois, plus the District of Columbia.

49. One of the 2003 Insurance Policies issued by Transportation, policy number WC 247857719, provides workers' compensation coverage to SCI Companies and various clients of SCI Companies in 2 states – Oregon and Wisconsin.

50. Another of the 2003 Insurance Policies issued by Transportation, policy number GL 247857722, provides stop-gap liability coverage to SCI Companies and various clients of SCI Companies in 5 states – North Dakota, Ohio, Washington, West Virginia, and Wyoming.

51. Except for policy numbers WC 247857672, WC 247857719, and GL 247857722, each of the 2003 Insurance Policies provides workers' compensation coverage to SCI Companies and specific clients of SCI Companies named in the particular policy.

52. The 2003 Insurance Program provided that SCI Companies had a deductible obligation of $750,000 per claim, except for claims under policy numbers WC 247857719 or GL 247857722.

### *The Finance Agreements:*

53. CNA Insurers and SCI Companies also entered into finance agreements within each Insurance Program. The finance agreements provided, among other things, for SCI Companies to reimburse CNA Insurers for all losses within the deductibles of the policies.

**2000 Finance Agreement**

54. Staffing Concepts, Inc. and Continental Casualty entered into a Finance Agreement effective as of January 1, 2000 ("2000 Finance Agreement").

55. The 2000 Finance Agreement expressly includes a list of some or all of the 2000 Insurance Policies, including those policies under which each of the SCI Companies is a named insured.

56. The 2000 Finance Agreement provides, among other things, that:

   (a) SCI Companies agreed to pay estimated premiums totaling $1,008,572 for all of the 2000 Insurance Policies;

   (b) SCI Companies agreed to reimburse Continental Casualty for the deductible portion of each loss;

   (c) Continental Casualty agreed to prepare periodic invoices supported by "Paid Loss Adjustments" detailing the amounts incurred by Continental Casualty and due from SCI Companies;

11

(d) SCI Companies agreed to pay all invoices within thirty days, after which Continental Casualty had the option of charging interest on unpaid amounts;

(e) Any SCI Company's failure to pay any amount when due under the terms of any of the 2000 Insurance Policies would constitute an Event of Default under the 2000 Finance Agreement;

(f) SCI Companies agreed to indemnify Continental Casualty for the reasonable costs, expenses, and fees, including attorneys' fees, incurred by Continental Casualty in efforts to collect under the 2000 Finance Agreement;

(g) All rights, remedies, and covenants under the 2000 Finance Agreement survive termination of the 2000 Insurance Program, the 2000 Insurance Policies, and the 2000 Finance Agreement; and

(h) The 2000 Finance Agreement will be construed and governed by Illinois law.

57. At this time, CNA Insurers make no claim that SCI Companies breached any obligations under the 2000 Finance Agreement. CNA Insurers reserve the right to seek to amend this complaint to add such a claim should CNA Insurers' discovery and investigation disclose that CNA Insurers have been damaged by breach of the 2000 Finance Agreement.

**2001 Finance Agreement**

58. Staffing Concepts International, Inc., American Casualty, and Transportation entered into a Finance Agreement effective as of January 1, 2001 ("2001 Finance Agreement").

59. The 2001 Finance Agreement expressly includes a list of some or all of the 2001 Insurance Policies, including those policies under which each of the SCI Companies is a named insured.

60. The 2001 Finance Agreement provides, among other things, that:

12

(a) SCI Companies agreed to pay estimated premiums totaling $912,873 for all of the 2001 Insurance Policies;

(b) SCI Companies agreed to reimburse American Casualty or Transportation for the deductible portion of each loss;

(c) American Casualty and Transportation agreed to bill SCI Companies monthly for, among other things, the prior month's losses paid under the 2001 Insurance Policies;

(d) SCI Companies agreed to pay all invoices within thirty days, after which American Casualty and Transportation had the option of charging interest on unpaid amounts;

(e) Any SCI Company's failure to pay any amount due American Casualty or Transportation when due under the terms of any of the 2001 Insurance Policies would constitute an Event of Default under the 2001 Finance Agreement;

(f) SCI Companies agreed to indemnify American Casualty and Transportation for the reasonable costs, expenses, and fees, including attorneys' fees, incurred by American Casualty or Transportation in efforts to collect under the 2001 Finance Agreement;

(g) All rights, remedies, and covenants under the 2001 Finance Agreement survive termination of the 2001 Insurance Program, the 2001 Insurance Policies, and the 2001 Finance Agreement; and

(h) The 2001 Finance Agreement will be construed and governed by Illinois law.

**2002 Finance Agreement**

61.  Staffing Concepts International, Inc., Continental Casualty, National Fire, and Transportation entered into a Finance Agreement effective as of January 1, 2002 ("2002 Finance Agreement").

62.  The 2002 Finance Agreement expressly includes a list of some or all of the 2002 Insurance Policies, including those policies under which each of the SCI Companies is a named insured.

63.  The 2002 Finance Agreement provides, among other things, that:

   (a) SCI Companies agreed to pay estimated premiums totaling $1,495,397 for all of the 2002 Insurance Policies;

   (b) SCI Companies agreed to reimburse Continental Casualty, National Fire, or Transportation for the deductible portion of each loss;

   (c) Continental Casualty, National Fire, and Transportation agreed to bill SCI Companies monthly for, among other things, the prior month's losses paid under the 2002 Insurance Policies;

   (d) SCI Companies agreed to pay all invoices within thirty days, after which Continental Casualty, National Fire, and Transportation had the option of charging interest on unpaid amounts;

   (e) Any SCI Company's failure to pay any amount when due under the terms of any of the 2002 Insurance Policies would constitute an Event of Default under the 2002 Finance Agreement;

   (f) SCI Companies agreed to indemnify Continental Casualty, National Fire, and Transportation for the reasonable costs, expenses, and fees, including attorneys'

fees, incurred by Continental Casualty, National Fire, or Transportation in efforts to collect under the 2002 Finance Agreement;

(g) All rights, remedies, and covenants under the 2002 Finance Agreement survive termination of the 2002 Insurance Program, the 2002 Insurance Policies, and the 2002 Finance Agreement; and

(h) The 2002 Finance Agreement will be construed and governed by Illinois law.

**2003 Finance Agreement**

64. Staffing Concepts International, Inc., its subsidiaries and affiliates, National Fire, Continental Casualty, Transportation, and American Casualty entered into a Finance Agreement effective as of January 1, 2003 ("2003 Finance Agreement").

65. The 2003 Finance Agreement expressly includes a list of some or all of the 2003 Insurance Policies, including those policies under which each of the SCI Companies is a named insured.

66. The 2003 Finance Agreement provides, among other things, that:

(a) SCI Companies agreed to pay estimated premiums as stated in the 2003 Insurance Policies;

(b) SCI Companies agreed to reimburse National Fire, Continental Casualty, Transportation, or American Casualty for the deductible portion of each loss within fifteen days of billing;

(c) National Fire, Continental Casualty, Transportation, and American Casualty had the option of charging interest on past due amounts;

(d) Any SCI Company's failure to pay any amount when due under the terms of any of the 2003 Insurance Policies or an EBP Policy would constitute an Event of Default under the 2003 Finance Agreement;

(e) SCI Companies agreed to indemnify National Fire, Continental Casualty, Transportation, and American Casualty for the reasonable costs, expenses, and fees, including attorneys' fees, incurred by National Fire, Continental Casualty, Transportation, or American Casualty in efforts to collect under the 2003 Finance Agreement;

(f) All rights, remedies, and covenants under the 2003 Finance Agreement survive termination of the 2003 Insurance Program, the 2003 Insurance Policies, and the 2003 Finance Agreement; and

(g) The 2003 Finance Agreement will be construed and governed by Illinois law.

## COUNT I – BREACH OF THE 2001 POLICIES AND FINANCE AGREEMENT

67. CNA Insurers repeat and reallege paragraphs 1-66 as if fully set forth herein.

68. CNA Insurers have performed any and all obligations to be performed by them under the 2001 Insurance Policies and the 2001 Finance Agreement.

69. During and after the term of the 2001 Finance Agreement, SCI Companies accepted the benefits of the 2001 Insurance Policies and the 2001 Finance Agreement.

70. During the calendar years 2001 through 2003, SCI Companies performed some or all of their obligations under the 2001 Insurance Policies and the 2001 Finance Agreement.

71. Despite demands by CNA Insurers, SCI Companies have failed and refused to pay invoices for over $2.7 million in amounts due under the 2001 Insurance Policies and the 2001 Finance Agreement.

72.     As a proximate result of SCI Companies' breaches of the 2001 Insurance Policies and the 2001 Finance Agreement, CNA Insurers have suffered damages in excess of $2.7 million.

73.     Additional debits and credits may arise in the future under the 2001 Insurance Policies and the 2001 Finance Agreement as additional claims are paid under the 2001 Insurance Policies and as future computations are undertaken. Consequently, CNA Insurers reserve the right to recover additional amounts from SCI Companies under the 2001 Insurance Policies and the 2001 Finance Agreement.

## COUNT II – BREACH OF THE 2002 POLICIES AND FINANCE AGREEMENT

74.     CNA Insurers repeat and reallege paragraphs 1-66 as if fully set forth herein.

75.     CNA Insurers have performed any and all obligations to be performed by them under the 2002 Insurance Policies and the 2002 Finance Agreement.

76.     During and after the terms of the 2002 Insurance Policies and the 2002 Finance Agreement, SCI Companies accepted the benefits of the 2002 Finance Agreement.

77.     During the calendar years 2002 through 2003, SCI Companies performed some or all of their obligations under the 2002 Insurance Policies and the 2002 Finance Agreement.

78.     Despite demands by CNA Insurers, SCI Companies have failed and refused to pay invoices for over $9.0 million in amounts due under the 2002 Insurance Policies and the 2002 Finance Agreement.

79.     As a proximate result of SCI Companies' breaches of the 2002 Insurance Policies and the 2002 Finance Agreement, CNA Insurers have suffered damages in excess of $9.0 million.

80. Additional debits and credits may arise in the future under the 2002 Insurance Policies and the 2002 Finance Agreement as additional claims are paid under the 2002 Insurance Policies and as future computations are undertaken. Consequently, CNA Insurers reserve the right to recover additional amounts from SCI Companies under the 2002 Insurance Policies and the 2002 Finance Agreement.

## COUNT III – BREACH OF THE 2003 POLICIES AND FINANCE AGREEMENT

81. CNA Insurers repeat and reallege paragraphs 1-66 as if fully set forth herein.

82. CNA Insurers have performed any and all obligations to be performed by them under the 2003 Insurance Policies and the 2003 Finance Agreement.

83. During and after the terms of the 2003 Insurance Policies the 2003 Finance Agreement, SCI Companies accepted the benefits of the 2003 Insurance Policies and the 2003 Finance Agreement.

84. During the calendar year 2003, SCI Companies performed some or all of their obligations under the 2003 Insurance Policies and the 2003 Finance Agreement.

85. Despite demands by CNA Insurers, SCI Companies have failed and refused to pay invoices for over $1.8 million in amounts due under the 2003 Insurance Policies and the 2003 Finance Agreement.

86. As a proximate result of SCI Companies' breaches of the 2003 Insurance Policies and the 2003 Finance Agreement, CNA Insurers have suffered damages in excess of $1.8 million.

87. Additional debits and credits may arise in the future under the 2003 Insurance Policies and the 2003 Finance Agreement as additional claims are paid under the 2003 Insurance Policies and as future computations are undertaken. Consequently, CNA Insurers reserve the

right to recover additional amounts from SCI Companies under the 2003 Insurance Policies and the 2003 Finance Agreement.

WHEREFORE, plaintiffs Continental Casualty Company; American Casualty Company of Reading, Pennsylvania; Transportation Insurance Company; and National Fire Insurance Company of Hartford respectfully request that the Court enter judgment in their favor and against defendants Staffing Concepts, Inc.; Staffing Concepts National, Inc.; Staffing Concepts International, Inc.; SC of Florida II, Inc.; Venture Resources Group, LLC; Alternative Marketing Group, Inc.; Human Capital Services, Inc.; Productive Employer Concepts, Inc.; Human Capital Solutions, Inc.; and Epic Staff Management, Inc. and award the following relief:

I.  on Count I, damages in excess of $2.7 million under the 2001 Insurance Policies and the 2001 Finance Agreement;

II. on Count II, damages in excess of $9.0 million under the 2002 Insurance Policies and the 2002 Finance Agreement;

III. on Count III, damages in excess of $1.8 million under the 2003 Insurance Policies and the 2003 Finance Agreement;

plus prejudgment interest as allowed by law, all costs and expenses of this action, including attorneys' fees, and any other relief the Court considers just and necessary under the circumstances.

Additional debits and credits may arise under the insurance policies and the finance agreements as additional claims are paid under the insurance policies, as future computations are undertaken, and as additional claim reimbursement billings are prepared. Consequently, CNA Insurers reserve the right to recover additional amounts from SCI Companies under the insurance policies and the finance agreements.

DATED:   October 10, 2006

Respectfully submitted,

CONTINENTAL CASUALTY COMPANY; AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA; TRANSPORTATION INSURANCE COMPANY; and NATIONAL FIRE INSURANCE COMPANY

By: _____
    One of Their Attorneys

Michael L. McCluggage (#1820966)
Kenneth M. Gorenberg (#6203808)
Richard J. Pearl (#6275676)
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
(312) 201-2000

20