UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONTINENTAL CASUALTY COMPANY, et al.,

    Plaintiffs,

v.                                            Case No:  8:09-cv-2036-T-AEP

STAFFING CONCEPTS, INC., et al.,

    Defendants.
_____/

# ORDER

This cause is before the Court upon CNA ClaimPlus, Inc.'s ("ClaimPlus") Motion for Attorneys' Fees and Costs ("Motion") (Dkt. No. 448) and Staffing Concepts, Inc.'s ("SCI") Response in Opposition to Plaintiff's Motion for Attorney's Fees (Dkt. No. 453). For the reasons that follow, ClaimPlus's Motion is granted.

## I. PROCEDURAL BACKGROUND

The procedural background of this case has been discussed extensively in several prior Orders. (*See* Dkt. No. 436, Dkt. No. 444). The Court will limit its summary here to the issues of arbitration and fees and costs, as they are the only concerns the parties raise in the Motion before the Court.

ClaimPlus and SCI entered into a Claims Services Agreement ("CSA") that ClaimPlus would provide claims handling services to SCI and SCI would pay ClaimPlus handling fees. In 2006, ClaimPlus filed for arbitration seeking $60,400 from SCI in unpaid handling fees. ClaimPlus also sought declaratory judgment that it did not mishandle SCI's claims (thereby preventing SCI from obtaining damages). In October 2010, the American Arbitration Association ("AAA") panel of arbitrators ordered SCI to pay ClaimPlus $60,400. The AAA panel of arbitrators

decided again in ClaimPlus's favor by finding a lack of evidence to support any claims mishandling by ClaimPlus. In May 2011, the AAA panel of arbitrators ordered SCI to pay ClaimPlus $2,283,014.70 in attorneys' fees and costs.

ClaimPlus then moved this Court to confirm the two awards, while SCI moved the Court to vacate them. The issue in this Court became whether or not the dispute should have been arbitrated in the first place. After a six-day bench trial, this Court held arbitration was proper based on the arbitration provisions in the CSA. ClaimPlus then refiled its motion to confirm the awards. This Court confirmed the awards on July 23, 2014.

By its Motion, ClaimPlus now seeks to recover $1,433,421.80 in fees and $68,046.94 in costs undertaken to obtain confirmation in this Court of the October 2010 and May 2011 arbitration awards. (Dkt. No. 448).

ClaimPlus argues it is entitled to, and that SCI is contractually obligated to pay, attorneys' fees and other expenses (Dkt. No. 448). In support of its position, ClaimPlus points to the fee and cost provision in the CSA: "In the event [ClaimPlus] undertakes any efforts to collect any amounts due from Client under this agreement, Client will indemnify [ClaimPlus] for the reasonable costs, expenses and fees of such collection efforts, including attorneys' fees, if any" (Dkt. No. 448). ClaimPlus also points to the indemnity clause in the CSA:

> In addition to any other indemnification provisions set forth in this Agreement each party agrees to indemnify, defend, and hold the other party and all of its affiliates and/or subsidiaries, whether now existing or subsequently acquired or created, and its and their employees, officers and directors harmless from and **against all liability, loss, damage or expense incurred in connection with any claims or demands for damages** (collectively "Damages"), **that arise from or are created by any act, error or omission, tortious or otherwise, of the indemnifying party**, its employees, officers or directors. Each party agrees that its obligation to the other party under this provision will be in the proportion to which its act, error or omission resulted in any such Damages. In no event shall [CNA ClaimPlus] be liable for any incidental, consequential or punitive damages or damages of a similar nature that may be incurred by Client as a result of the Claim Services, unless caused by the fraudulent, willful and wanton or grossly negligent act or omission of [CNA

> ClaimPlus] or its employees not taken at the specific direction of Client. **"Loss", as used in this clause, includes,** without limitation, all judgments, settlements, claim payments, refusals of a reinsurer to pay a loss or any part thereof, punitive and exemplary damages, fines and penalties to the extent the law allows, indemnification and **reasonable fees (including attorneys' fees), costs and expenses** and interest. This provision will survive the termination of this Agreement.

2001 CSA, Sec. III, ¶4 (emphasis added); 2002 CSA, Sec. III, ¶4 (emphasis added); 2003 CSA, Sec. III, ¶4 (emphasis added) (Dkt. No. 448).

The fees ClaimPlus requests include work done on the original petitions to confirm the arbitration panel's awards; the briefing on SCI's motions to vacate the panel's awards; the additional discovery on the question of arbitrability; ClaimPlus's motion or summary judgment on arbitrability; the six-day bench trial on arbitrability; and preparation of ClaimPlus's proposed findings of fact and law (Dkt. No. 448).  ClaimPlus argues that "all of these tasks constitute 'efforts to collect any amounts due from [SCI] under the CSA" (Dkt. No. 448).  Further, ClaimPlus argues the tasks are "also expenses incurred 'in connection with . . . claims or demands for damages . . . that arise from or are created by any act, error, or omission, tortuous or otherwise, of the indemnifying party,'" as per the parties' agreement (Dkt. No. 448).

SCI's limited response is an argument based on strict construction (Dkt. No. 453). SCI essentially argues that a strict interpretation of the CSA's provisions would prevent ClaimPlus from recovering attorneys' fees and costs because such fees and costs are not "collections."  SCI argues its first point, as follows, based on the first provision of the CSA:

> '[I]n the event [ClaimPlus] undertakes any efforts to collect any amounts due from [SCI] under this agreement, [SCI] will indemnify [ClaimPlus] for the reasonable costs, expenses and fees of such collection efforts, including attorneys' fees, if any.' Strict construction of this language dictates that [ClaimPlus's] only contractual right to recovery of costs and fees is for 'efforts to collect amounts due from [SCI].

(Dkt. No. 453).

SCI next argues that the second provision of the CSA does not provide for indemnification in litigation between SCI and [ClaimPlus] (Dkt. No. 453). To do so, SCI contends, "would render [p]rovision [t]wo nonsensical" because the CSA "requires the parties to . . . indemnify each other for the damages arising from or caused by 'any act, error, or omission, tortious or otherwise. . .of the indemnifying party.'" (Dkt. No. 453). Finally, SCI contends that the fees and costs, even if recoverable, should be denied or reduced in consideration of the context of this litigation. (Dkt. No. 453.)

## II. STANDARD OF REVIEW

### A. The Parties' Agreement

Generally, an unsuccessful party in an action under Illinois law is not responsible for the opposing party's attorneys' fees. *Mirar Dev., Inc. v. Kroner*, 308 Ill. App. 3d 483, 488 (1999) (citing *Myers v. Popp Enterprises, Inc.,* 216 Ill. App. 3d 830, 838 (1991)); A*bdul-Karim v. First Federal Sav. and Loan Ass'n of Champaign*, 101 Ill. 2d 400, 412 (1984). Contracting parties may, however, agree to pay attorneys' fees in an action on contract, but such provisions are strictly construed. *See, e.g., Chapman v. Engel*, 372 Ill. App. 3d 84, 87 (2007); *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 226 (citing *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership,* 325 Ill. App. 3d 276, 281 (2001)); *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 951; *Anest v. Audino*, 332 Ill. App. 3d 468, 479 (2002). Trial courts may enforce such agreements at their discretion. *Powers v. Rockford Stop-N-Go, Inc*., 326 Ill. App. 3d 511, 515 (2001); *Mirar Dev., Inc.*, 308 Ill. App. 3d at 488; *Ferrara v. Collins*, 119 Ill. App. 3d 819, 825 (1983). In construing the contract, "the court must determine the intention of the parties with respect to the payment of attorney fees." *Jackson v. Hammer*, 274 Ill. App. 3d 59, 70 (1995). *See also Anest*, 332 Ill. App. 3d at 479; *Mirar Dev., Inc.,* 308 Ill. App. 3d at 488.

## B. The Reasonableness of Fees and Expenses

Where a contract provision provides for fees, the trial court must conduct a reasonableness evaluation. *U.S. Fid. & Guar. Co. v. Old Orchard Plaza Ltd. P'ship*, 333 Ill. App. 3d 727, 740 (2002) (citing *In re Pine Top Insurance Co.,* 292 Ill. App. 3d 597, 604 (1997)). The party requesting attorney fees bears the burden of presenting sufficient evidence from which the appellate court can make a decision regarding the reasonableness of the fees. *Id.*; *Mirar Dev., Inc.*, 308 Ill. App. 3d at 488; *Tomlinson v. Dartmoor Construction Corp*., 268 Ill. App. 3d 677, 688 (1994); *Kaiser v. MEPC Am. Properties, Inc*., 164 Ill. App. 3d 978, 983 (1987). A petition for fees must supply the Court with "detailed records containing facts and computations upon which the charges are predicated specifying the services performed, by whom they were performed, the time expended and the hourly rate charged." *Harris Trust & Sav. Bank v. Am. Nat. Bank & Trust Co. of Chicago*, 230 Ill. App. 3d 591, 595 (1992). The Court must then consider several other factors, including "the skill and standing of the attorneys employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation." *Id.; Blankenship v. Dialist International Corp.*, 209 Ill.App.3d 920, 927 (1991); *Kaiser*, 164 Ill. App. 3d at 984; *Ashby v. Price*, 112 Ill. App. 3d 114, 122 (1983).

## III. DISCUSSION

### A.  ClaimPlus Is Contractually Entitled to Fees from SCI

ClaimPlus argues that the terms of the 2001, 2002, 2003 Claims Services Agreements entitle it to fees and costs incurred from disputes arising under the CSAs. ClaimPlus[1] first cites the fee and cost provision, identical in each CSA, which reads:

> In the event [ClaimPlus] undertakes any efforts to collect any amounts due from [SCI] under this Agreement, [SCI] will indemnify [ClaimPlus] for the reasonable costs, expenses and fees of such collection efforts, including attorneys' fees, if any.

2001 CSA, Sec. II, ¶1 (Dkt. No. 448-1); 2002 CSA, Sec. II, ¶1 (Dkt. No. 448-2); 2003 Sec. II, ¶1 (Dkt. No. 448-3). In response, SCI maintains this provision provides for recovery of fees and costs only in actions that are collection efforts by ClaimPlus, not mishandling claims by SCI.

SCI's interpretation, however, belies the very language of the agreement. The language agreed to by the parties is wide-ranging in scope, referring to "any efforts," undertaken by ClaimPlus, not, as SCI contends, actions. *See* 2001 CSA, Sec. II, ¶1 (Dkt. No. 448-1); 2002 CSA, Sec. II, ¶1 (Dkt. No. 448-2); 2003 Sec. II, ¶1 (Dkt. No. 448-3). 'Efforts' is a broad term, and one that strongly implies the potentiality of a series of actions, both direct and collateral. Moreover, the agreement goes on to specify its intent to cover any efforts "to collect *any amounts due* from [SCI] *under this Agreement*." *See* 2001 CSA, Sec. II, ¶1 (Dkt. No. 448-1) (emphasis added); 2002 CSA, Sec. II, ¶1 (Dkt. No. 448-2) (emphasis added); 2003 Sec. II, ¶1 (Dkt. No. 448-3) (emphasis added). This language does not specify a distinction between collection efforts, claims mishandling, or unpaid handling fees, all of which, in the ordinary course of things, commonly encompass one another, or, at a minimum, are inextricably intertwined. Instead, it simply states: "any amounts due." *See* 2001 CSA, Sec. II, ¶1 (Dkt. No. 448-1); 2002 CSA, Sec. II, ¶1 (Dkt. No. 448-2); 2003 Sec. II, ¶1 (Dkt. No. 448-3). Furthermore, the language expressly states that "any amounts due from [SCI] *under this Agreement*" are subject to the clause. *See* 2001 CSA, Sec. II, ¶1 (Dkt. No. 448-1)

---

[1] The Court has already determined by prior Order that SCI waived any objections to the assignment of the CSAs to ClaimPlus. (Dkt. No. 436 at 27-36.)

(emphasis added); 2002 CSA, Sec. II, ¶1 (Dkt. No. 448-2) (emphasis added); 2003 Sec. II, ¶1 (Dkt. No. 448-3) (emphasis added).  It follows that any amounts due to ClaimPlus from SCI arising from the contractual relationship between ClaimPlus and SCI, as detailed in the CSAs, are the object of and are encompassed by the clause.  The arbitrability dispute at issue was a natural and foreseeable outgrowth of ClaimPlus's effort to, among other things, recover unpaid claim handling fees and confirm the arbitration panel's award, as well as defend against SCI's effort to vacate the arbitration award.[2]  *Cf. Kensington Rock Island Ltd. P'ship v. Am. Eagle Historic Partners*, 921 F.2d 122, 124 (7th Cir. 1990) (upholding an award of fees under Illinois law related to fighting affirmative defenses due to the connection between such fees and collection efforts).  Therefore, strictly construing the broad terms of the clause, *see Chapman*, 372 Ill. App. 3d at 87; *Peleton, Inc.*, 375 Ill. App. 3d at 226, compels the conclusion that the clause contemplated SCI's indemnification of ClaimPlus for the fees and costs sought in ClaimPlus's instant Motion.[3]  *See Jackson,* 274 Ill. App. 3d at 70 (describing the Court's requirement to determine the intent of the parties with respect to the payment of attorneys' fees); *Anest*, 332 Ill. App. 3d at 479 (same); *Mirar Dev., Inc.*, 308 Ill. App. 3d at 488 (same); *see also Carney v. Paul Revere Life Ins. Co.*, 359 Ill. App. 3d 67, 74 (2005) ("We note that a contract is not rendered ambiguous merely because the parties disagree on the meaning of its terms; however, a contract is not necessarily unambiguous when each party insists that the language unambiguously supports its position.") (citing *Central Illinois Light Co. v. Home Ins. Co.,* 213 Ill. 2d 141, 153–54; *cf. Franklin Cnty. Coal Co. v. Ames*, 359 Ill. 178, 181 (1934) ("[S]trict construction is a relative, and not a precise, term. It is not the

---

[2] As detailed in ClaimPlus's Motion, ClaimPlus moved in this Court to confirm the arbitration's Interim and Final Awards, and SCI moved to vacate them.  (Dkt. Nos. 264, 276, 307, 309.)

[3] Because the Court reaches this conclusion, it need not consider whether the CSA's mutual indemnity clause supports ClaimPlus's request for attorneys' fees and costs.  *See* 2001 CSA, Sec. III, ¶4; 2002 CSA, Sec. III, ¶4; 2003 CSA, Sec. III, ¶4.

exact antithesis of liberal construction. It does not consist in giving words the narrowest possible meaning of which they are susceptible.") (citation and internal quotations omitted)).

### B. The Fees Requested by ClaimPlus are Reasonable

Having concluded ClaimPlus is contractually entitled to fees and costs from SCI for the matters detailed in its Motion, the Court turns to whether the requested fees and costs are reasonable. Upon review of ClaimPlus's Motion and supporting documentation, the Court finds ClaimPlus to have met its burden of production and that the requested fees and costs are reasonable. *See U.S. Fid. & Guar. Co.*, 333 Ill. App. 3d at 740; *Harris Trust & Sav. Bank*, 230 Ill. App. 3d at 595.

ClaimPlus submits documentation for fees and costs incurred through October 2013, relating to ClaimPlus's original petitions to confirm the arbitration panel's awards, briefing on SCI's motions to vacate the panel's awards, additional discovery on the question of arbitrability, ClaimPlus's motion for summary judgment on arbitrability, a bench trial held on the issue of arbitrability, and, finally, to ClaimPlus's proposed findings of fact and law. (Dkt. No. 448.) The Court is satisfied that the services rendered and fees and costs incurred in the time period identified reasonably relate to the litigation and, as detailed above, constitute expenses provided for by section II paragraph 1 of the CSAs.

Additionally, having reviewed the fees and expenses against the indicia set forth by Illinois law, the Court finds they are reasonable as submitted. The nature of this case, which involved and continues to involve multiple parties and complex litigation issues, supports the volume and substance of legal work detailed in ClaimPlus's Motion and attached exhibits. Moreover, given the standing of the attorneys and law firms involved, the Court finds the rates of billing to be entirely reasonable and commensurate with that which is usual and customary for similar services. This conclusion is bolstered by the fact that all fees and expenses sought in ClaimPlus's Motion

have been paid. *See Tan v. Boyke*, 156 Ill. App. 3d 49, 60 (1987) (stating that under Illinois law paid bills may serve as *prima facie* evidence that fees incurred were reasonable); *Omni Overseas Freighting Co. v. Cardell Ins. Agency*, 78 Ill. App. 3d 639, 645 (1979) (same).

### IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

**ORDERED**:

1. Plaintiff's Motion (Dkt. No. 448) is GRANTED. ClaimPlus is awarded $1,433,421.80 in fees and $68,046.94 in costs (Dkt. No. 450), as well as prejudgment and post-judgment interest.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:

Counsel of Record